**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 24-4078

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

FREDRICK WENDELL MCCRAY, a/k/a Dub,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the District of South Carolina, at Charleston. Bruce H. Hendricks, District Judge. (2:22-cr-00139-BHH-1)

———————

Argued: January 29, 2025                              Decided: June 25, 2025

———————

Before HEYTENS and BERNER, Circuit Judges, and Elizabeth W. HANES, United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Louis H. Lang, CALLISON, TIGHE & ROBINSON, LLC, Columbia, South Carolina, for Appellant. Christopher Scott Lietzow, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Fredrick Wendell McCray received a downward variant sentence of 360 months after pleading guilty to various drug trafficking offenses, possession of a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm and ammunition. McCray appeals his sentence, contending that it was procedurally unreasonable because the district court failed to address his nonfrivolous argument that he should not be sentenced as a career offender. For the reasons stated below, we affirm the district court.

I.

McCray pleaded guilty, without a plea agreement, to conspiracy to possess with the intent to distribute and to distribute cocaine, methamphetamine, and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 (Count 1); possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 2); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 4); and unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b) (Counts 16-18, 20-24, and 26).

The district court considered the presentence investigation report ("PSR") prepared for McCray's sentencing. Of import here, the PSR designated McCray as a career offender under U.S.S.G. § 4B1.1 because McCray had two prior felony convictions for controlled

2

substance offenses and one of his instant offenses was a controlled substance offense.[1] As a career offender, McCray's criminal history category was increased to a Category VI and his total offense level was 37. After several objections to the PSR were withdrawn or resolved by agreement,[2] the Court adopted the following advisory Guidelines range: 360 months to life imprisonment on Counts 1, 2, 4, 16-18, 20-24, and 26, followed by five years consecutive on Count 3, for a total range of 420 months to life. *See* 18 U.S.C. § 924(c)(1)(A). Had McCray not been designated as a career offender, his criminal history category would have been Category V while his total offense level would have remained at 37, resulting in the following advisory Guidelines range: 324 to 405 months, followed by 60 months consecutive, for a total range of 384 to 465 months.

McCray's counsel submitted a sentencing memorandum seeking a downward variant sentence of fifteen to twenty years of incarceration. The memorandum drew on many of the § 3553(a) factors but particularly emphasized McCray's "history and characteristics." *See* 18 U.S.C. § 3553(a)(1). McCray cited a study measuring the impact of incarceration on life expectancy and a U.S. Sentencing Commission report showing that

---

[1] U.S.S.G. § 4B1.1 provides that a defendant should be classified as a "career offender" if: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

[2] McCray was initially designated as an armed career criminal for purposes of the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e)(1). Prior to sentencing, however, the Government recommended that McCray not be sentenced as an armed career criminal and the Court agreed the designation would not apply.

3

older individuals are less likely to recidivate than younger individuals. McCray also provided some context for his offense conduct, stating that his "financial struggles" during the COVID-19 pandemic contributed to his "ill-fated decision to return to criminal activity." J.A. 39. McCray also suggested -- in a footnote -- that the court "disregard" his career offender designation but did not argue that the designation was improperly applied in the PSR. J.A. 41. McCray cited data and reports from the Sentencing Commission to argue that the career offender designation produces sentences that are "among the most severe and the least likely to promote sentencing purposes" and that it had become "one of the least influential guidelines." J.A. 41-42. McCray also described the "more troubling" data indicating the "clear, disproportionate impact" of the career offender designation on Black men. J.A. 42. The government did not submit a sentencing memorandum.

During sentencing, McCray's attorney emphasized McCray's "family and personal characteristics," including his commitment to his wife, children, and grandchildren, his capacity for rehabilitation, and the financial pressure he was facing at the time of the offense. J.A. 63-65. Defense counsel also referenced the data cited in McCray's sentencing memorandum regarding age, recidivism, and the relationship between incarceration and life expectancy. In concluding his argument, defense counsel reflected on the "concept of mercy," before reiterating the statistics included in the sentencing memorandum about the weakening influence of the career offender designation and its disparate racial impact. J.A. 66. Defense counsel conceded that the career offender designation was properly applied to McCray but asked that the court "disregard" it and grant a downward variance. *Id.* By doing so, he argued, the court would be following the

4

"majority of judges across the country" in recognizing that "sentences dictated by career offender guidelines are the most severe and least likely to promote sentencing purposes." *Id.* Following argument, McCray's family spoke to the court, as did McCray.

Prior to imposing its sentence, the district court explained that it had "considered everything" in McCray's sentencing memorandum, as well as "the points . . . raised at sentencing," a letter from McCray, and the remarks made by his family members. J.A. 75. The court noted that it "appreciate[ed] the science that defense counsel placed in the sentencing memorandum in regards to age and aging out of criminal thinking, et cetera." *Id.* With respect to McCray's prior convictions, the court observed that his criminal history was "lengthy," "troubling," and "serious." J.A. 76. The court also cited statements McCray made on a Title III wiretap and concluded that "McCray was the number-one actor" in the charged drug trafficking operation. *Id.*

The district court then acknowledged McCray's request for "mercy," and stated that it would "give [McCray] a little mercy" and grant his motion for a variance "based primarily on . . . McCray's troubling and troubled upbringing and the poor circumstances and dire circumstances that he grew up in." J.A. 77. The court specifically rejected McCray's argument that he became involved in drug trafficking because of financial pressures during the COVID-19 pandemic. With respect to the Guidelines, the court stated that it had "calculated and considered the advisory sentencing guidelines." *Id.* The court then imposed a sentence of 360 months of incarceration, consisting of 300 months on Counts 1 and 2; 120 months on Count 4; 48 months on Counts 16 through 18, 20 through

24, and 26, all to run concurrently; and 60 months on Count 3, to run consecutively to all other counts.

II.

On appeal, McCray contends that his sentence was procedurally unreasonable because the district court failed to address his nonfrivolous argument that he should not be sentenced as a career offender under the Guidelines.  We review sentences -- including their procedural reasonableness -- under a "deferential abuse-of-discretion standard." *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).  A district court imposes a procedurally reasonable sentence where it correctly calculates the applicable advisory Guidelines range, allows the parties to argue for their requested sentences, considers those arguments in the context of the § 3553(a) factors, and sufficiently explains the sentence imposed.  *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019).  "A district court is required to provide an individualized assessment based on the facts before the court, and to explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing."  *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (internal quotation marks and citation omitted).  In conducting its individualized analysis, the district court must address the defendant's "nonfrivolous arguments" in favor of a lesser sentence.  *Blue*, 877 F.3d at 518.

"The context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly."  *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir.

6

2006). We may not, however, "guess at the district court's rationale." *United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009). Here, we do not have to guess. The district court's consideration of McCray's personal characteristics, its engagement with the other arguments made by defense counsel, and its decision to impose a below-Guidelines sentence provide the context we need to find that the district court conducted the "individualized assessment" that marks a procedurally reasonable sentence. *Gall*, 552 U.S. at 50.

Comparing the facts of this case to those recently considered by our Court in *United States v. Shields* is helpful. *See* 126 F.4th 356 (4th Cir. 2025). In *Shields*, we vacated a within-Guidelines sentence as procedurally unreasonable based on the district court's failure to consider a defendant's non-frivolous argument for a downward variance. At Shields' sentencing, the government objected to the PSR's calculation of Shields' Guidelines range, arguing that a prior conviction should have been classified as a "controlled substance offense" for purposes of U.S.S.G. § 2K2.1(a)(4). Shields did not contest that objection as a legal matter. Instead, Shields argued that if the district court sustained the objection, it should grant him a downward variance to avoid creating unwarranted sentencing disparities. While the district court thoroughly analyzed -- and ultimately sustained -- the government's objection, it did not address Shields' separate "equitable argument" regarding disparities. *Id.* at 359. The district court then sentenced Shields to the bottom of the Guidelines range, which had increased to reflect the government's sustained objection. We found that Shields' equitable argument, rooted in

7

the § 3553(a) factors, was nonfrivolous, and that the district court erred in not considering it.

*Shields* is distinguishable from the instant case.  In *Shields*, the calculation of the Guidelines range and the equitable implications of that calculation were a dominant issue at sentencing.  At McCray's sentencing, however, his argument that the career offender designation results in overly punitive sentences that exacerbate racial disparities was a supplemental and relatively minor argument.  McCray's request for a downward variance drew primarily on his history and characteristics, and the district court's explanation of its sentence mirrored that focus.  The district court emphasized McCray's "troubling and troubled upbringing," while also noting that it had considered the "science" McCray cited regarding age, recidivism, and life expectancy.  J.A. 77.  True, the district court did not specifically reference McCray's arguments regarding racial disparities or the purportedly declining influence of the career offender designation.  Our caselaw makes clear, however, that a district court does not have to address every one of the defendant's "supporting data point[s]" in order to impose a procedurally reasonable sentence.  *See United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020); *see also United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020) (noting that the individualized assessment requirement "does not require the court to address every argument a defendant makes").  Here, unlike in *Shields*, we are satisfied that the district court adequately considered "the whole" of McCray's argument.  *See Arbaugh*, 951 F.3d at 174.

There is also an obvious indicator in this case that the district court adequately considered McCray's arguments in favor of a below-Guidelines sentence: the court

8

ultimately imposed a below-Guidelines sentence. That indicator was missing in *Shields*, as well as in *Blue*, and in many of our other procedural reasonableness cases. *See, e.g.*, *United States v. Jackson*, 127 F.4th 448 (4th Cir. 2025). While the district court here did not explicitly state that it was disregarding the career offender designation, it *did* disregard the career offender designation when it sentenced McCray 60 months below the Guidelines range produced by that designation. In fact, the district court imposed a sentence below even the 384-to-465-month advisory Guidelines range that would have applied if McCray had not been a career offender. That outcome, and the context of the proceeding, make it "patently clear" that the district court adequately considered McCray's arguments in favor of a downward variance. *See Nance*, 957 F.3d at 215.

Finally, McCray also contends that confusion in the PSR and at the sentencing hearing between the "armed career criminal" designation and the "career offender" designation make it unclear whether the district court considered his argument regarding the latter. During the sentencing hearing, the district court stated that it would "accept the government's request not to sentence [McCray] as an armed career *offender*," in response to the government's request not to sentence McCray as an armed career *criminal*. *See* J.A. 49 (emphasis added). The government argues the error was simply a verbal scrivener's error. We agree with that characterization and find that the district court's misstatement does not negate its otherwise careful approach to McCray's sentencing.

Similarly, the PSR labelled McCray's 1997 conviction for possession and distribution of cocaine as a "predicate for Armed Career *Offender* pursuant to 4B1.4," even though U.S.S.G. § 4B1.4 is titled "Armed Career Criminal." *See* J.A. 110 (emphasis

9

added).  This apparent error also does not change our analysis.  McCray does not have a legal objection to the PSR's treatment of his prior felony convictions, and in context, it is clear that the PSR was referring to U.S.S.G. § 4B1.4 rather than § 4B1.1.

### III.

For the reasons set out above, the judgment of the district court is

*AFFIRMED*.

10